(Decided March 25th, 1896.)

---

THE CHESTER COUNTY HOSPITAL *vs.* MOZART W. HAYDEN, Executor, and THE CHURCH HOME AND INFIRMARY—EMILY HOWARD, an Infant, *vs.* THE SAME.

*Devise and Legacy—Abatement—When one General Legacy May Have Priority Over Others—Allowances to Executors.*

The general rule is that when the assets of a testator's estate are insufficient to pay all the legacies in full, the general legacies abate *pro rata*, but when it is the manifest intention of the testator that one general legacy shall have preference over others, effect will be given to that intention.

A general legacy is not saved from abatement with others by reason of the meritorious character of the legatee when there is nothing in the language of the will to indicate an intention to give its preference.   But the circumstance of the near relationship and dependence

of the legatee is an auxiliary reason for allowing priority, when the words used indicate that such was the intention of the testator.

A testatrix directed her executor to hold in trust the sum of $10,000 for the use of her father, and, upon his death, directed "the whole amount of the $10,000" to be paid over to the Church Home. The will then made other general legacies. The father of the testatrix was dependent upon her for support, and survived her more than a year. The estate was insufficient to pay all the legacies in full. *Held*,

1st. That it was the intention of the testatrix that the legacy to her father should have preference over other pecuniary legacies.

2nd. That, upon his death, the Church Home, being the legatee of the same fund in remainder, was entitled to the same preference.

When an executor, who is directed by the will to hold a certain sum in trust for the use of a legatee, makes advances to him after the death of the testator and before the settlement of the estate, he is entitled to be reimbursed the same to an amount not exceeding the interest earned on the fund so set apart.

Appeals by the Chester County Hospital and Emily Howard, an infant, by her guardian *ad litem*, from a decree of the Circuit Court of Baltimore City (WRIGHT, J.), construing the will of Virginia Norwood, deceased, and distributing the funds of her estate. The decree directed that the funds be applied, after payment of costs, etc.: " Third, to the payment to the plaintiff, Mozart W. Hayden, of so much of the sums advanced by him to pay the board and necessary expenses, and funeral expenses of the said Lambert Smith Norwood, as he may produce vouchers for to the auditor, and as the interest accrued on the said sum of ten thousand dollars, bequeathed in trust for the said Lambert Smith Norwood, from the death of the testatrix to the date of his death (less his executor's commission thereon), will avail to pay ; the surplus, if any, of the interest on said legacy accrued during said period to be paid to the estate of said Lambert Smith Norwood. Fourthly, to the payment in full to the Church Home and Infirmary of the city of Baltimore, of its said legacy of ten thousand dollars, less the collateral inheritance tax thereon, together with the interest thereon accrued since the 19th day of February, 1895. And to apply the balance towards the payment *pro rata*, as

hereinbefore indicated, of said legacies to the Chester County Hospital, and to the said Emily Howard, less the collateral inheritance tax thereon."

The will referred to was as follows : " The last will and testament of Virginia Norwood, spinster, written by herself while in full possession of her health and senses.   1.  In the first place, I wish to state that the reason that I leave so little money is because I have spent part of my principal from time to time whenever I have felt like doing so for my own benefit and pleasure, as there is no one on earth who has the slightest legal claim upon me or anything that I possess, and I thought I might as well enjoy the good of it myself in my own fashion.   I wish my very good and faithful friend, Mr. W. Mozart Hayden, to wind up my small estate and to attend to all necessary business affairs ; I will also ask him to hold in trust the sum of ten thousand dollars ($10,000) for the use and maintenance of my father, Lambert Smith Norwood, as long as he shall live.   At the death of my father I want the whole amount of the ten thousand dollars paid over, free of trust, to the trustees of the Church Home and Infirmary on North Broadway, Baltimore, Md., to be used for the endowment of a free room or free beds, to be known as the Virginia Norwood Memorial.   To the trustees of the Chester County Hospital, West Chester, Pa., I leave six thousand dollars ($6,000) to be used for the endowment of as many free cots or beds, for women, as can be had for that amount, and to be known as the Virginia Norwood Memorial."

\*      \*      \*      \*      \*      \*

" To. Emily Howard, the eldest daughter of John Beal Howard, I leave one thousand dollars ($1,000)."

There are a number of specific legacies which have been delivered and do not in any way affect this case, leaving only the three legacies to the present appellants and the Church Home, aggregating $17,000 unpaid.   The executor testified that the value, of the estate remaining in his hands was $13,520, from which he was entitled to get $380.70, overpayment. .

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*John Hinkley* (with whom were *Hinkley & Morris* and *Arthur W. Machen* on the brief), for the appellants.

1. Appellants contend that there is no priority between the three pecuniary legatees under the present will and all must abate *pro rata*. Mr. Hayden should have, towards reimbursement of payments for Mr. Norwood's support and funeral, ten-seventeenths of the income actually accruing during Mr. Norwood's life (less executor's commissions). The Chester County Hospital and Emily Howard should have respectively six-seventeenths and one-seventeenth of the same; and the net balance should be distributed ten-seventeenths to the Church Home, six-seventeenths to the Chester County Hospital, and one-seventeenth to Emily Howard.

2. If the Court hold that there was a priority in Mr. Lambert Norwood's life and Mr. Hayden gets $\frac{10,000}{13,520}$ of the income actually accruing in Mr. Lambert's life, and the Chester County Hospital and Emily Howard six-sevenths and one-seventh of the balance of such income, *still there is no priority as to the Church Home's legacy in remainder*, and the net balance should be divided ten-seventeenths, six-seventeenths and one-seventeenth, as above.

3. The income during Mr. Norwood's life is apportionable, being all interest on railroad mortgage bonds and municipal bonds, and not rents or dividends.

All three legacies in this case are clearly general, and the only question is whether there is anything in the words of the will giving the legacy to the father for life, with remainder to the Church Home, a preference over the other two legacies. The general rule is that where there is a deficiency of assets all general legacies abate *pro rata*, and the burden is on the legatee to show from the words of the will itself a clear case of preference.    1 *Roper on Legacies*, 415–430; *Ward on Legacies*, 370–378; *Engl. and Am. Cycl. of*

*Law,* vol. 13, pages 134–143 ; *Woerner on Administration,* sec. 452 ; 2 *Williams on Executors,* 1211–1224 and note 11, 7th Am. ed. p. 674 ; *Croswell on Executors,* sec. 489 ; 2 *Redfield on Wills,* 450.

The intention must be clear and conclusive, and the Court must be quite satisfied before equality among the legatees will be disturbed. *University's Appeal,* 97 Pa. St. 187 ; *Thevaites* v. *Foreman,* Collier, 409 ; *Estate of Gray,* 13 Phila. 372 ; *Beeston* v. *Booth,* 4 Maddock, 161 ; *Duncan* v. *Franklin,* 43 N. J. Eq. 143 ; *Richardson* v. *Hall,* 124 Mass. 228 ; *Emery* v. *Batchelder,* 78 Me. 240 ; *Blower* v. *Monet,* 2 Ves. Sr. 420 ; *Roche* v. *Harding,* 7 Irish Eq. 338 ; *Brown* v. *Allen,* 1 Vernon, 31 ; *Swasey* v. *Bible Socy.,* 57 Me. 528 ; *Everett* v. *Carr,* 59 *Ibid,* 325.

The recognized classes of exceptions, where the preference is inferred, are : 1st. Where there is what is technically known as "two residues" created expressly by providing that certain legacies should be payable out of the residue remaining after paying others. *Blower* v. *Morret,* 2 Vesey, Sr., 420. 2d. Where, after certain bequests, the testator expresses an opinion that there will be assets in excess, which is taken as an indication that the latter legacies are given only in view of the supposed excess. *Attorney-General* v. *Robbins,* 2 P. Wms. 23 ; *Stammers* v. *Halliley,* 12 Sim. 42. 3d. Where there is a consideration, of debt or dower, or curtesy ; but this may be a valid debt and does not apply to composition creditors. *Coppin* v. *Coppin,* 2 P. Wms. 292, at 296. Nor where the widow is not entitled to dower. *Roper* v. *Roper,* L. R. 3, Ch. Div. 714, at 718 ; *Acey* v. *Simpson,* 5 Beavan, 35. Nor in Maryland, even to a gift to a widow in excess of dower, as to which dower she stands as a "purchaser." *Mayo* v. *Bland,* 4 Md. Ch. 484, at 491 ; *Dugan* v. *Hollins,* 11 Md. 41, at 78 ; *Howard* v. *Francis,* 30 N. J. Eq. 444, at 448. So a husband entitled by statute to renounce and take a portion of the estate is preferred solely as a purchaser. *Farnum* v. *Bascom,* 122 Mass. 282, at 289. 4th. Some cases where the natural love

and affection for children, and the obligation to support them, has been held to entitle them to priority over strangers. *Lewin* v. *Lewin*, 2 Vesey, Sr., 416. But this case is distinguished by LORD HARDWICKE, the same Chancellor who delivered the opinion in *Lewin* v. *Lewin*, in the subsequent case of *Blower* v. *Morret*, 2 Vesey, Sr., 420, and his former decision in *Lewin* v. *Lewin*, said to have been deduced from the creation of "two residues" under the will. *Blower* v. *Morret* contains a discussion of the above-mentioned grounds of exception. See also criticisms of *Lewin* v. *Lewin*, in *Eng. and Amer. Cycl. of Law*, vol. 13, page 142, note 2 : *Miller* v. *Huddlestone*, 3 Mach. & Gordon, 513. This preference to children is denied, unless the language of the will furnishes proof of such intention. *Miller* v. *Huddlestone*, 3 Mach. & Gordon. 513. In *Babbidge* v. *Vittum*, 156 Mass. 38, the Court abated a legacy for the support of a daughter, and distinguished the case of *Towle* v. *Swasey*, (cited below), on the ground of the legacy in the case under consideration, being in excess of a necessary support. In *Jett* v. *Bernard*, 3 Call, (Va.) 10, a legacy to a son "to supply himself with necessaries" abated equally with a legacy to the widow. The Courts have refused to give any preference to a legacy for the support of a brother or sister. *Titus* v. *Titus*, N. J. Eq. 111 ; *Towle* v. *Swazey*, 106 Mass. 100, at 108. Or a sister's daughter. *Emery* v. *Batchelder*, 78 Maine, 233. We have found no cases, however, of a preference being sought for a legacy to a father.

*Chas. Handfield Wyatt* for the Church Home and Infirmary, appellee.

The contention of the Church Home in support of the decree is founded on the clear and emphatic expression of the *wish* and *intention* of the testatrix as contained in the will, and as supported by all the circumstances. It is free from any difficulty in the interpretation of technical words, but is strongly supported by the distinction which the law makes between different kinds of legacies. It is hardly worth while to submit authorities to this Court to sustain

the propositions that in the interpretation of wills the cardinal principle is to find out the *intention* of the testator and to carry that *intention* into effect unless it be contrary to some fixed principle of law—that the sources from which such intention is to be gathered are the *words* of the will, taken in connection with the *circumstances* of the testator; that these words and *each* of them, are to be taken in their natural sense and force under the surroundings, apart from any technical meaning, and indeed ignoring such technical meaning unless the intent is clearly apparent so to use them.    And these rules of interpretation are still more obligatory, when, as in this case the will is holographic, and the testatrix is expressing her personal wishes and intentions in the best way she knew how, without the aid or advice of counsel. *Fairfax* v. *Brown*, 60 Md. 50 (p. 54); *Douglas* v. *Blackford*, 7 Md. 8 (p. 22); *Littig* v. *Hance*, 81 Md. 416 (p. 424–5).

The testatrix evidently meant to dispose of her whole estate; and if it should be hereafter determined that the real estate referred to is charged with the payment of the two general legacies, it may possibly be found that the estate may be sufficient to pay these legacies in full.    But if no inadequacy had appeared and the father had survived the division of the estate, the result would have been that the Chester Co. Hospital and Emily Howard would have received the whole of their legacies, while the Church Home might have been obliged to wait for several years for the fruition of its legacy, and would have had to incur the risk of the loss of the whole or part thereof; and then without any source from which it might seek contribution. There is therefore no equity now, when there is an apparent deficiency in assets, in seeking to take from the Church Home what the testatrix intended to go to it, in order to repair a possible loss in the other legacies, which they were liable to under any interpretation.    The testatrix evidently expected her father to survive her, as is shown by her provision in the will as to her own burial, and the wish that

her father might live at the Church Home, and the provisions for his burial.   The fact that the father died contrary to her expectation before the estate was settled cannot alter, or authorize the Court to alter, an intention so clearly expressed, and to make another will for the testatrix.

The intention being so clearly expressed, the duty of the executor was, immediately after payment of debts, to set apart this sum of ten thousand dollars, and to apply the income thereof, to the use and maintenance of the father; and this he practically did, by applying to such use and maintenance the sum of $713.97, being within a few dollars of the interest that would have accrued upon the said $10,000 within the time during which the father survived; the decree below affirmed this action, the appellant assented to it, and has not appealed therefrom.

The *formal* segregation of this $10,000 had not been actually made at the time of the death of the father; but this has no effect on the duty of the executor nor on this contention.   Under the principle of equity that "what ought to be, is," the setting apart was virtually made, and therefore when the estate came to be divided, it should be dealt with as if the segregation had been made with all due formality, and the father still survived to need it for his use and maintenance.   It can hardly be argued, that had the father so survived, the executor would have been authorized to set apart a smaller sum, and one perhaps entirely insufficient to carry out the clearly expressed intention of the testatrix for her father's support, in order that there might be contribution to these *general* legacies ; and the Court, putting itself in her place, would hardly declare such to be her intention.   If such would not be declared her intention had the father lived longer, the accident of the death of the father can not change that intent, or authorize anyone to make a new will for the testatrix.

BOYD, J., delivered the opinion of the Court.

Virginia Norwood, a resident of Baltimore City, died on the 26th day of November, 1893, leaving a last will and

testament, by which she made some specific bequests, and left three pecuniary legacies aggregating seventeen thousand dollars. The will was written by the testatrix herself, and although it was inartificially drawn and not clothed in language usual in such instruments, it is sufficiently clear to enable us to ascertain her intentions as to the questions involved in this appeal. W. Mozart Hayden qualified as her executor, took possession of her personal estate, and settled an account in the Orphans' Court of Baltimore City, which showed a balance, after payment of expenses, debts and commissions, and delivery of the articles specifically bequeathed, of a little over thirteen thousand dollars. He subsequently filed a bill of complaint in the Circuit Court of Baltimore City, asking that Court to assume jurisdiction over the further administration and settlement of the personal estate, to construe the will and to grant him other relief, which so far as presented by this appeal will be hereafter referred to. The questions before us arise by reason of the fact that the balance of the estate is not sufficient to pay the pecuniary legacies in full, and we are therefore called upon to determine whether the Church Home and Infirmary of the city of Baltimore is entitled, under the terms of the will, to a preference over the other pecuniary legacies, or whether the three abate *pro rata*.

The provisions of the will involved in this controversy are, " I wish my very good and faithful friend, Mr. W. Mozart Hayden, to wind up my small estate and to attend to all necessary business affairs; I will also ask him to hold in trust the sum of ten thousand dollars ($10,000) for the use and maintenance of my father, Lambert Smith Norwood, as long as he shall live. At the death of my father I want the whole amount of the ten thousand dollars paid over, free of trust, to the trustees of the Church Home and Infirmary on N. Broadway, Baltimore, Maryland, to be used for the endowment of a free room or free beds, to be known as the Virginia Norwood Memorial."

" To the trustees of the Chester County Hospital, West

Chester, Penn., I leave six thousand dollars ($6,000), to be used for the endowment of as many free cots or beds for women as can be had for that amount, and to be known as the Virginia Norwood Memorial."

"To Emily Howard, the eldest daughter of John Beal Howard, I leave one thousand dollars ($1,000.")

It is admitted that the corporations made parties to this suit are those intended by the testatrix, although the names stated in the will are not altogether accurate.   Miss Norwood's father died Feb. 19th, 1895, thus surviving her for nearly fifteen months.   At the time of his death her estate had not been settled, but the executor provided for his bond and other necessary expenses, and also paid his funeral expenses. His condition at the date of the death of his daughter is thus described by a witness: "Pecuniarily he was absolutely penniless and dependent upon his daughter for support.   He was from age and general debility incapacitated from performing any work."   The will was dated July 16th, 1893, and the testatrix commenced it by giving as a reason for leaving so small an estate that she had spent part of the principal when she felt like doing so for her own benefit and pleasure, "as there is no one on earth who has the slightest legal claim upon me or anything I possess," but she evidently recognized the fact that she was under moral obligations to make some provision for her father, and there is nothing in the record to suggest that the sympathy and affection that should be expected from a daughter for an aged and helpless father did not exist.   On the contrary, we find that she added to her will, although not a part of it, as it was apparently written after the execution of it, "I would be glad if my father would consent to go to the Church Home in Baltimore to live.   I know he would be well taken care of there," which is signed "V. N."   His condition and her care and treatment of him are circumstances to be considered in arriving at a proper conclusion as to what her intention was, which is after all the important and generally controlling guide for Courts in construing

wills, when it can be discovered from the face of the will and such extraneous evidence as the law permits an investigation of.

The intention of the testatrix becomes important in this case, as the legacy for the benefit of her father was not a specific legacy, as it was not a "bequest of a particular thing or money specified and distinguished from all others of the same kind;" nor was it a demonstrative legacy, as it was not given with reference to a particular fund for payment; but it was a gift of a definite sum to be taken out of her estate without any designation of the part of the estate from which it was to be taken. It was, therefore, in the nature of a general legacy, and the question arises whether it can be gathered from the will that the testatrix intended it to be paid at all events, to the exclusion, if necessary, of the other pecuniary legacies. It is undoubtedly true that as a general rule, when there is a deficiency of assets, all general legacies abate *pro rata*, but one of that class may be entitled to preference over the others if such be the manifest intention of the testator.

We cannot say that the legacy does not abate with the other two for the *sole* reason that it was for the benefit of the father of the testatrix, if there be nothing in the will to show such intention. As was said in *Towle* v. *Swasey*, 106 Mass. 107, "The meritorious character of the legatee is not to be considered as affecting it when there is nothing in the language of the will or the character and declared purpose of the gift to indicate an intention to prefer. The will is to be interpreted by what the testator has written, rather than by what he ought to have written." But, as the Court proceeded to say, "The circumstances of near relationship and dependence, though not of themselves sufficient, may, however, be regarded as constituting, in the language of the Lord Chancellor in *Miller* v. *Huddlestone*, 3 Macn. and G. 513, 528, 'an auxiliary reason for allowing such priority where the words used in the will favor the notion of a priority to a sufficient degree.'"

Now, whilst it is true that a daughter is under no legal obligation to provide for her father, yet under the circumstances related above, it would be unnatural for her not to do so.   If Miss Norwood had died intestate, her father, under the laws of distribution in this State, would have been entitled to the whole of her personal property, after payment of debts, costs, etc., as she left no child or descendant.   Art. 93, sec. 126, of the Code of Public General Laws. There was, therefore, an " auxiliary reason for allowing such priority," if the language of her will sufficiently favors that result.   Let us examine it, then, to determine whether such is the case.   The first disposition she attempts to make of any of her estate is the provision for her father.   She said : " I will also ask him (the executor), to *hold* in trust the sum of ten thousand dollars, $10,000, for the use and maintenance of my father   *   *   as long as he shall live ;" that is, as we understand her meaning, she directed him to retain in his keeping, not to give up or relinquish, this sum of ten thousand dollars as long as her father lived, which she thus set apart for his use and maintenance.   The income from that sum, after deducting the costs and charges incident to the trust, was not more than a reasonable amount for his support and care, especially when the uncertainty of the rates and prompt payment of interest are considered.   The payment of the legacies to the Chester County Hospital and Emily Howard were not directed to be postponed until after her father's death, but were payable, if her estate was sufficient, one year after his death, the time the law fixes, when the will does not name the time or indicate a contrary intention of the testator, for the payment of pecuniary legacies.   It is not probable that she expected or intended the provision for her father to be affected by an abatement in favor of the other legatees, which would have been the case if her father had lived after the settlement of her estate, if the contention of the appellant be correct.   If it be assumed that she supposed when she made the will that her estate was then sufficient to pay all the legacies in full, she

knew, as shown by her will, that she was gradually diminishing it by the use of the principal, and she was presumed to know that her will only took effect from the date of her death, and hence was doubtless aware that if she and her father lived for any considerable time there might be a deficiency and for that reason directed her executor to *hold* the sum of ten thousand dollars for the use of her father, and thereby separate it from the rest of her estate. We are of the opinion that her intention to at least give her father the preference over the other pecuniary legatees is manifest from the language of the will, which, although not in such terms as some one learned in the law would have used, is sufficiently clear to satisfy us that she intended her executor to set apart this sum for her father's benefit and after doing so then to pay the other pecuniary legacies in full, if her estate be sufficient, or *pro rata* in the event of a deficiency, as otherwise her manifest purpose of providing for her father during his life might have been defeated.

But it is contended by the appellants that if such be the case as to the father, upon his death there was no preference in favor of the Church Home, and the case of *Towle* v. *Swasey*, *supra*, is relied on to sustain that position. In that case it was held that there was a preference in favor of a son of the testator to the extent of the income on ten thousand dollars for his education and support during his minority, but that the provision that the principal should be paid to him when he arrived at the age of twenty-one years did not give him such preference, and it abated with other legacies. But the Court said : " There is nothing in the will which gives that part of the legacy any preference." That is not the case with the will now before us. It expressly says, that, " At the death of my father I want the *whole amount of the ten thousand dollars* paid over, free of trust, to the Church Home and Infirmary," etc. The meaning of that language does not admit of controversy. Having determined that the testatrix directed the *setting apart* of the

ten thousand dollars for her father's use and maintenance, during his life, we cannot now say that *only a portion* of it should be given to the Church Home without ignoring the plain and unequivocal meaning of her wish as expressed in her will when she said, " I want *the whole amount* of the ten thousand dollars paid over." We do not agree with the learned counsel for the appellants that this expression was simply intended to mean that the principal of the fund was not to be used by the trustee for the maintenance of her father. The gift in trust for the benefit of the father showed with sufficient clearness that only the income from it was to be used, and the language now under considera-tion was not explanatory of it, but is the part of the will by which the legacy to the Church Home was left. It gets nothing except what comes through the expression " at the death of my father I want the whole amount of the ten thou-sand dollars paid over," etc., and it would be doing violence to the wishes of the testatrix, as gathered from the language used by her, to take the term " whole amount " from this sentence, and import it into the previous provision for the life estate. The legacy to the Church Home must be paid in full and does not abate with the other two.

The only other objection presented by this appeal, is to the part of the decree which directs the payment to the ex-ecutor of so much of the sum advanced by him for Mr. Nor-wood " as the interest accrued on the said sum of ten thou-sand dollars, bequeathed in trust for the said Lambert Smith Norwood, from the death of the testatrix to the date of his death (less his executor's commission thereon) will avail to pay," etc. The bonds themselves were not bequeathed, but only the sum of money and no particular bonds or other securities had been actually set apart to this legacy by the executor when Mr. Norwood died. If the estate, as seems to have been the case, was earning interest when Miss Nor-wood died and continued to do so until the death of her father, interest should be allowed between those periods. No objection is made by the appellant to the payment of

some interest to the life-tenant during the first year after the death of the testatrix, but only to the amount of it.  Under the circumstances we think he was entitled to that allowed by the  decree, and  as the executor made advancements to and for him, he is entitled to be reimbursed to the extent of his payments, not to exceed, however, the amount of interest on ten thousand dollars between the dates named.

*Decree affirmed; costs to be paid out of the estate.*

(Decided March 26th, 1896).